JUSTICE KINSER
delivered the opinion of the Court.
After a bench trial on December 5, 1996, Todd M. Glaseo was convicted in the Circuit Court of the City of Newport News of possession of cocaine with intent to distribute, in violation of Code § 18.2-248, and possession of a firearm while in possession of cocaine, in violation of Code § 18.2-308.4.[1] We granted Glaseo this appeal on a single issue regarding the legality of a search of the passenger compartment of his vehicle incident to his arrest. Because we conclude that he was a recent occupant of the vehicle prior to his arrest, we will affirm the judgment of the Court of Appeals finding that the search was lawful.
I.
On May 4, 1996, around 11:00 o’clock p.m., Wesley T. Filer, a uniformed police officer for the City of Newport News, was on duty and patrolling in a marked police vehicle when he observed a vehicle that he suspected was being operated by Glaseo. Filer was familiar with both the vehicle and Glaseo because of a recent encounter with Glaseo. Filer had arrested Glaseo on an outstanding capias for failure to pay traffic fines approximately two weeks prior to this particular evening. Based on his knowledge that a driver’s failure to pay fines normally resulted in suspension of that person’s operator’s license and given his previous arrest of Glaseo, Filer suspected that Glasco’s license to operate a motor vehicle had been suspended. However, Filer decided not to stop the vehicle at that time. Instead, he chose to follow the car so that he could determine whether Glaseo was, in fact, the driver.
While following the vehicle, Filer contacted his dispatcher and requested that a check be made with the Division of Motor Vehicles (DMV) in order to determine the status of Glasco’s operator’s license. Before Filer received a response to his request, Glaseo pulled his vehicle over to the right-hand side of the street and legally parked it there. Glaseo then got out of the vehicle and began to walk toward a house on the other side of the street. At that point, Filer stopped his *436 police cruiser approximately 20 to 30 feet behind Glasco’s vehicle. After activating his rear strobe light and exiting his police car, Filer called out, “Mr. Glaseo, you don’t have a valid license, do you?” According to Filer, Glaseo then turned around and began walking toward Filer, at which time Glaseo answered, “Come on, Filer, can’t you just give me a break?”- Filer requested Glaseo to show some form of identification. Glaseo produced a Virginia identification card but no operator’s license. In the meantime, Filer learned, based on the check with DMV, that Glasco’s operator’s license was, in fact, suspended. Thus, he charged Glaseo with “driving under suspension” and placed him under arrest.
Incident to the arrest, Filer searched Glasco’s person and found two small bags containing marijuana in the right, front pocket of Glasco’s shorts. He also found $650 in cash and a pager on Glasco’s person. Filer then put Glaseo in the backseat of his police vehicle and asked a backup police officer, John V. Polak, to search Glasco’s car. During this search, Polak found a .38 caliber handgun in the pocket of the driver’s door and a clear, plastic bag containing, what he thought was and later, when analyzed, proved to be, crack cocaine under the floor mat on the driver’s side of the vehicle.
At a hearing before the trial court on a motion to suppress the evidence found during the search of the vehicle, Filer admitted that he “had no probable cause to believe” that there was any contraband or narcotics in the vehicle when he asked Polak to search it. He did, however, assert that he had a “hunch there might be some narcotics located in the vehicle” based on information that he had received in the past regarding Glasco’s involvement with narcotics, and because he had recovered narcotics from his person. The trial court concluded that, once Filer found drugs in Glasco’s pocket, there was “probable cause to believe possibly there [were] narcotics in the vehicle.” Accordingly, the court overruled Glasco’s motion to suppress the evidence recovered during the search of the vehicle.
Before the Court of Appeals, Glaseo challenged the sufficiency of the evidence to support his convictions and the legality of both the initial encounter with the police officer and the subsequent search of his vehicle incident to his arrest. With regard to the issue before this Court, the Court of Appeals concluded that the search of Glasco’s automobile incident to arrest was lawful because it was “contemporaneous with the arrest and the arrestee’s recent occupancy of the vehicle.” Glasco v. Commonwealth, 26 Va. App. 763, 773, 497 *437 S.E.2d 150, 154 (1998).[2] Thus, the Court of Appeals affirmed the judgment of the trial court. Id. at 776, 497 S.E.2d at 156.
II.
We begin our analysis of a search incident to arrest with the decision of the United States Supreme Court in Chimel v. California, 395 U.S. 752 (1969). In that case, the Court defined the parameters of a lawful search incident to arrest:
When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer’s safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee’s person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee’s person and the area “within his immediate control” — construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.
Id. at 762-63.
Several years after the Chimel decision, the Supreme Court acknowledged that the extent of the area that is within an arrestee’s control and thus subject to being searched had been construed in different ways. United States v. Robinson, 414 U.S. 218, 224 (1973). With regard to the search of a vehicle incident to arrest, the Supreme Court later stated that the “courts have found no workable definition of ‘the area within the immediate control of the arrestee’ when that area arguably includes the interior of an automobile and the arrestee is its recent occupant.” New York v. Belton, 453 U.S. 454, 460 (1981). Thus, the Court established a “bright-line” rule to govern such searches: “when a policeman has made a lawful custodial arrest *438 of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.” Id.
Using this rule, the Court upheld the legality of the automobile search at issue in Belton. The police officer in that case had stopped a vehicle, in which Belton was a passenger, for travelling at an excessive rate of speed. Id. at 455. After directing Belton and the other occupants to get out of the automobile, the officer arrested them for unlawful possession of marijuana. Incident to the arrest, he searched the interior passenger compartment of the vehicle. Id. at 456. During the search, the police officer found cocaine in the pocket of Belton’s jacket that had been lying on the back seat of the car. Id.
Belton established a two-part inquiry for determining the legality of a search of a vehicle incident to arrest: (1) whether the defendant was the subject of a lawful custodial arrest; and (2) whether the arrestee was the occupant of the vehicle that was searched. People v. Savedra, 907 P.2d 596, 598-99 (Colo. 1995). The present appeal involves the second part of the inquiry and requires that we address the scope of the terms “occupant” and “recent occupant” as used by the Supreme Court in Belton.
Glaseo contends that the search of his vehicle violated his Fourth Amendment right against unreasonable searches and seizures because he was not a recent occupant of the vehicle at the time of his arrest. He had parked his vehicle and was walking across the street when Filer first initiated contact with him. Further, argues Glaseo, he was sitting in the back seat of Filer’s police cruiser, parked 20 to 30 feet behind Glaseo’s vehicle, when Polak actually searched the vehicle. Thus, according to Glaseo, he was not in a position to seize a weapon out of the vehicle or to destroy evidence in it.
Initially, we conclude that certain facts in this case do not render the search of Glasco’s vehicle outside the parameters of a lawful search incident to arrest. The fact that Glaseo was not physically in the vehicle when he was arrested or when Polak searched the vehicle does not mean that Glaseo was not a recent occupant of the vehicle. The defendant in Belton likewise was outside the vehicle when the police officer arrested him and conducted the vehicle search. 453 U.S. at 457. “A police officer may search the passenger compartment of an automobile incident to the lawful custodial arrest . . . even if the arrestee has been separated from his car prior to the search.” United States v. Mans, 999 F.2d 966, 968-69 (6th Cir. 1993); accord United States v. Snook, 88 F.3d 605, 608 (8th Cir. *439 1996); United States v. Milton, 52 F.3d 78, 80 (4th Cir. 1995); United States v. Franco, 981 F.2d 470, 473 (10th Cir. 1992); United States v. Karlin, 852 F.2d 968, 971 (7th Cir. 1988).
Similarly, the fact that Glaseo was sitting in the back seat of Filer’s police cruiser when Polak searched the vehicle, thus arguably not in a position to seize a weapon or destroy evidence, does not change the result. “[Ojfficers may conduct valid searches incident to arrest even when the officers have secured the suspects in a squad car and rendered them unable to reach any weapon or destroy evidence.” United States v. Willis, 37 F.3d 313, 317 (7th Cir. 1994); accord United States v. Patterson, 993 F.2d 121, 123 (6th Cir. 1993); United States v. Cotton, 751 F.2d 1146, 1149 (10th Cir. 1985); Gundrum v. State, 563 So.2d 27, 28-29 (Ala. Crim. App. 1990); State v. Weathers, 506 S.E.2d 698, 699 (Ga. App. 1998); but see United States v. Vasey, 834 F.2d 782, 788 (9th Cir. 1987).
The pivotal fact in this case is that Glaseo had voluntarily exited the vehicle before Filer initiated any contact with him, either by confronting Glaseo directly or by signaling confrontation with the lights or siren on the police cruiser. Other courts that have considered the question whether an arrestee in this situation is still a recent occupant of a vehicle have reached differing conclusions.
A number of jurisdictions have held that an arrestee is an occupant of a vehicle only when the police officer arrests or at least initiates contact with the defendant while the defendant is inside the automobile. See United States v. Hudgins, 52 F.3d 115, 119 (6th Cir.), cert. denied, 516 U.S. 891 (1995) (“[Wjhere the defendant has voluntarily exited the automobile and begun walking away from the automobile before the officer has initiated contact with him, the case does not fit within Belton’s bright-line rule.”); State v. Vanderhorst, 419 So.2d 762, 763-64 (Fla. Dist. Ct. App. 1982) (holding Belton not applicable where defendant was attaching tow rope to vehicle when police approached and arrested him for DUI); Commonwealth v. Santiago, 575 N.E.2d 350, 353 (Mass. 1991) (holding search of vehicle did not qualify as search incident to arrest because defendant had already exited automobile when officers apprehended him); People v. Fernengel, 549 N.W.2d 361, 362-63 (Mich. App. 1996) (finding Belton not applicable when defendant voluntarily left vehicle before police initiated contact).
Other courts have reached contrary results. See Snook, 88 F.3d at 608 (holding that arrestee was occupant of vehicle even though he had voluntarily stepped out of car as police officer arrived); Willis, *440 37 F.3d at 317 (ruling that Belton applied where police officer saw arrestee sitting in vehicle and then sneaking out of it before officer initiated any contact with arrestee); United States v. Arango, 879 F.2d 1501, 1506 (7th Cir. 1989), cert. denied, 493 U.S. 1069 (1990) (finding that defendant, who was first detained by police while walking away from vehicle, then fled, was arrested one block from vehicle, and was then returned to vicinity of vehicle by police, was recent occupant under Belton); State v. McLendon, 490 So.2d 1308, 1309-10 (Fla. Dist. Ct. App. 1986) (extending Belton to justify vehicle search where driver voluntarily got out of vehicle and was arrested inside service station twenty to thirty feet away from vehicle); Savedra, 907 P.2d at 599 (“Belton can include situations where the occupant of a vehicle anticipates police contact and exits the vehicle immediately before that contact occurs.”); People v. Bosnak, 633 N.E.2d 1322, 1326 (Ill. App. 1994) (holding that arrestee was recent occupant of vehicle under Belton rule where police officer followed vehicle but did not initiate contact until arrestee parked vehicle and walked ten yards away).[3]
As previously stated, the justification for a search incident to arrest is to confiscate weapons that could endanger the safety of the arresting police officer and to prevent the destruction of evidence. Chimel, 395 U.S. at 763; Agnello v. United States, 269 U.S. 20, 30 (1925). The Supreme Court’s purpose for enunciating the Belton “bright-line” rule was twofold. The Court wanted to create a straightforward definition of the area that is within the immediate control of the arrestee, thus providing “ ‘[a] single familiar standard ... to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront.’ ” Belton, 453 U.S. at 458 (quoting Dunaway v. New York, 442 U.S. 200, 213-14 (1979)). The Court also sought to eliminate the need for litigation in every case to determine whether the passenger compartment of a *441 vehicle is within the scope of a search incident to arrest. McLendon, 490 So.2d at 1309-10.
Given these reasons, we are not persuaded by the authorities that have decided that an arrestee is an occupant or recent occupant of an automobile only if the police officer initiates contact with the arrestee before that person exits the vehicle. That kind of limitation assumes that an individual, who voluntarily gets out of an automobile, is not aware of the presence of a police officer, or having such knowledge, it did not prompt the person to exit the vehicle. We do not believe that those assumptions are always warranted. Moreover, a knowledgeable suspect has the same motive and opportunity to destroy evidence or obtain a weapon as the arrestee with whom a police officer has initiated contact. That suspect could also conceal evidence in the vehicle and effectively prevent an officer from discovering it by getting out of his or her automobile.
Thus, as in the present case, when a police officer observes an automobile, follows it because of his or her prior knowledge regarding the vehicle and its suspected driver, and arrests the driver in close proximity to the vehicle immediately after the driver exits the automobile, we conclude that the arrestee is a recent occupant of the vehicle within the limits of the Belton rule. Accordingly, the search of the passenger compartment of Glasco’s vehicle was a lawful search incident to arrest.
For these reasons, we will affirm the judgment of the Court of Appeals.

Affirmed.

 The trial court sentenced Glaseo to 12 years imprisonment, 9 years suspended, on the conviction for possession of cocaine with intent to distribute; and five years imprisonment, 4 and one-half years suspended, on the conviction for possession of a firearm.

 The Court of Appeals also upheld the initial stop of Glasco and found sufficient evidence to support Glasco’s convictions.

 Additionally, we infer from the Supreme Court’s decision in Michigan v. Long, 463 U.S. 1032 (1983), that initial contact by a police officer before an arrestee exits a vehicle is not required. In that case, the defendant met the police officers at the rear of his vehicle after he had swerved off into a ditch. Id. at 1035. Although the court upheld the legality of the officer’s subsequent search of the defendant’s vehicle based on the principles enunciated in Terry v. Ohio, 392 U.S. 1 (1968), the Court also stated that “[i]t is clear . . . that if the officers had arrested Long for speeding or for driving while intoxicated, they could have searched the passenger compartment under [Belton].” 463 U.S. at 1035 n.1.